**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**,

      Plaintiff,

v.

**JOYVIDA, LLC, d/b/a AMADA SENIOR CARE**,

      Defendant.

---

## COMPLAINT AND JURY TRIAL DEMAND

---

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct alleged unlawful employment practices on the basis of sex and/or retaliation, and to provide appropriate relief to Charging Party Lemayia Pettigrew and to other female employees of Defendant who were adversely affected by the unlawful practices alleged herein.

As alleged with greater particularity below, Lemayia Pettigrew and other female employees of Defendant were subjected to sexual harassment while providing in-home personal care to Defendant's clients in the Colorado Springs, Colorado area. The sexual harassment included—but was not necessarily limited to—persistent unwelcome verbal harassment, unwelcome sexual advances, and unwelcome and offensive physical touching, all directed to female employees of Defendant by one or more of Defendant's clients, or client family members. This harassment was egregious, including, for example, at least two instances of a client's family

member touching female employees with his genitals. Moreover, although at least two female employees repeatedly reported the persistent harassment to Defendant, it failed to respond promptly and adequately to the egregious harassment.  To the contrary, Defendant required these female employees to return to the same work environment despite being fully aware of the ongoing, persistent, and egregious sexual harassment to which they would be subjected.  In addition, when female employees reported the sexual harassment to Defendant, Defendant retaliated against them, by actions including, without limitation, curtailing their job assignments, terminating them, or forcing resignation to escape the egregious harassment which Defendant refused to rectify.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 (f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3.      Plaintiff Equal Employment Opportunity Commission ("The Commission") is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant JOYVIDA LLC d/b/a Amada Senior Care ("Defendant Amada") has continuously been doing business in the State of Colorado and the City of Colorado Springs and surrounding communities, and has continuously had at least fifteen (15) employees.

5.      At all relevant times, Defendant Amada has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.      More than thirty days prior to the institution of this lawsuit, Lemayia Pettigrew filed a charge with the Commission alleging violations of Title VII by Defendant Amada.

7.      On May 11, 2018, the Commission issued to Defendant Amada, a Letter of Determination finding reasonable cause to believe that Defendant Amada violated Title VII.

8.      The Commission's determination included an invitation for Defendant Amada to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment and remedy the unlawful employment practices.

9.      The Commission engaged in discussions with Defendant Amada in an effort to give Defendant Amada an opportunity to remedy the discriminatory practices identified in the Letter of Determination.

10.      On June 18, 2018, the Commission issued to Defendant Amada a Notice of Failure of Conciliation advising that the Commission was unable to secure from Defendant Amada a conciliation agreement acceptable to the Commission.

11.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## <u>GENERAL ALLEGATIONS</u>

**I.  Allegations Regarding Charging Party Lemayia Pettigrew**

      **a.  Background Relevant to Ms. Pettigrew**

12.  Charging Party Lemayia Pettigrew was hired by Defendant Amada in approximately June 2014.

13.  Ms. Pettigrew was employed by Defendant Amada as a Personal Care Worker.

14.  As a Personal Care Worker for Defendant Amada, Ms. Pettigrew provided in-home personal care to Defendant Amada's clients.

15.  At all relevant times, Defendant Amada assigned the clients to whom Ms. Pettigrew would provide in-home services and the locations in which she was required to work.

16.  Beginning in or around June 2014, Defendant Amada assigned Ms. Pettigrew to provide caregiving services on a regular basis to Defendant Amada's clients, non-parties Donald Kvol and Eileen Kvol, in their home.

17.  During all relevant times, Donald Kvol and Eileen Kvol's adult son, Kenneth Kvol, resided in the Kvols' home.

18.  As part of her regular and required job functions, Ms. Pettigrew was required to enter the home of Donald Kvol and Eileen Kvol, and to interact with them and their adult son, Kenneth Kvol.

19.  During all relevant times and for purposes of the allegations and claims pled herein, each of Donald Kvol, Eileen Kvol and Kenneth Kvol were clients or customers of Defendant Amada.

**b.      Workplace Sexual Harassment of Ms. Pettigrew.**

20.      Soon after Defendant Amada assigned Ms. Pettigrew to work in the home of Donald Kvol and Eileen Kvol, their adult son Kenneth Kvol began a pattern of persistent, aggressive, and offensive sexual harassment of Ms. Pettigrew.  In particular:

   a.   Kenneth Kvol frequently made inappropriate sexual advances towards Ms. Pettigrew;

   b.   Kenneth Kvol frequently made derogatory sexual remarks directed at Ms. Pettigrew;

   c.   Kenneth Kvol exposed his penis to Ms. Pettigrew;

   d.   Kenneth Kvol touched Ms. Pettigrew's breasts;

   e.   Kenneth Kvol approached Ms. Pettigrew while he was completely naked;

   f.   On at least one occasion, Kenneth Kvol touched Ms. Pettigrew with his genitals.

21.      As more specifically alleged above, Kenneth Kvol's comments and conduct directed at Ms. Pettigrew were of a sexual nature and directed at her because of her sex.

22.      Kenneth Kvol's comments and conduct directed at Ms. Pettigrew, as more specifically alleged above, were unwelcome.

23.      Kenneth Kvol's comments and conduct directed at Ms. Pettigrew, as more specifically alleged above, were offensive to her.

24.      Kenneth Kvol's comments and conduct directed at Ms. Pettigrew, as more specifically alleged above, are offensive to a reasonable woman.

25.      Kenneth Kvol's comments and conduct directed at Ms. Pettigrew, as more specifically alleged above, occurred while Ms. Pettigrew was working within the scope of her employment by Defendant Amada as a personal care worker.

26.     Kenneth Kvol's comments and conduct directed at Ms. Pettigrew, as more specifically alleged above, occurred in a work environment where Defendant Amada assigned and required Ms. Pettigrew to work.

27.     Kenneth Kvol's comments and conduct directed at Ms. Pettigrew, as more specifically alleged above, were pervasive, in that they occurred regularly and frequently.

28.     Some or all of Kenneth Kvol's comments and conduct directed at Ms. Pettigrew—*e.g.*, grabbing her body, exposing his penis to her, and touching her with his genitals—were sufficiently severe that even a single instance was sufficient to alter the terms and conditions of her employment and thereby create a hostile work environment.

**c.     Defendant Amada's Failure to Respond Promptly and Adequately to Reported Sexual Harassment.**

29.     Ms. Pettigrew repeatedly reported Kenneth Kvol's conduct, as more specifically alleged above, to Defendant Amada, including to management-level employees.

30.     In June and July 2014, Ms. Pettigrew reported the above-described harassment to Defendant Amada's Placement Coordinator, Ms. Ashley Free.

31.     Upon information and belief, Ashley Free was a management-level employee of Defendant Amada at the time(s) when Ms. Pettigrew reported the above-described harassment.

32.     In addition, in June and/or July 2014, Ms. Pettigrew reported the above-described harassment to Defendant Amada's Office Manager, Ms. Desiree Lister.

33.     Upon information and belief, Desiree Lister was a management-level employee of Defendant Amada at the time(s) when Ms. Pettigrew reported the above-described harassment.

34.     Further, in June and/or July 2014, Ms. Pettigrew reported the above-described harassment to Defendant Amada's Owner and Chief Executive Officer, Mr. Kenneth Jenson.

35.     Upon information and belief, Owner/CEO Jenson is a management-level employee of Defendant Amada and was a management level-employee of Defendant Amada at the time(s) when Ms. Pettigrew reported the above-described harassment.

36.     As a result of Ms. Pettigrew's reports to Placement Coordinator Free, Office Manager Lister, and/or Owner/CEO Jenson, Defendant Amada knew or should have known of Kenneth Kvol's inappropriate conduct directed at Ms. Pettigrew, as more specifically alleged above.

37.     As a result of Ms. Pettigrew's reports to Placement Coordinator Free, Office Manager Lister, and/or Owner/CEO Jenson, Defendant Amada knew or should have known that Ms. Pettigrew was being sexually harassed in her workplace.

38.     As a result of Ms. Pettigrew's reports to Placement Coordinator Free, Office Manager Lister, and/or Owner/CEO Jenson, Defendant Amada knew or should have known that the environment in which Defendant Amada required Ms. Pettigrew to work was a hostile work environment.

39.     Despite Ms. Pettigrew's repeated reports, Defendant Amada failed to take prompt and appropriate corrective action to remedy the egregious sexual harassment.

40.     To the contrary, upon information and belief, despite Ms. Pettigrew's reports— including reporting that Kenneth Kvol had exposed his penis to her, touched her sexually and against her will, and touched her with his genitals—Defendant Amada required Ms. Pettigrew to return to the same hostile environment.

41.     Defendant Amada knew or should have known that by requiring Ms. Pettigrew to return to the Kvols' home, she would be required to interact with Kenneth Kvol, the person perpetrating the harassment.

42.     Defendant Amada knew or should have known that by requiring Ms. Pettigrew to return to the Kvols' home, Defendant Amada was subjecting her to sexual harassment and requiring her to work in a hostile work environment.

43.     Despite Ms. Pettigrew's reports of sexual harassment beginning in June 2014, Defendant Amada took no action to respond for at least one month.

44.     Despite Ms. Pettigrew's reports of sexual harassment beginning in June 2014, Defendant Amada continued to require her to work regularly in the Kvols' home and with Kenneth Kvol for over one month.

45.     On at least one occasion when Ms. Pettigrew reported to Defendant Amada the sexual harassment she had experienced, she was told by Owner/CEO Jenson or other management-level employees of Defendant Amada, that she would be required to continue working in the Kvols' home until Defendant Amada could identify another employee for the assignment.

46.     Defendant Amada took no actions during June and July 2014 to halt or alleviate the sexual harassment to which Ms. Pettigrew was being subjected.

47.     On at least one occasion when Ms. Pettigrew reported to Defendant Amada the sexual harassment that she had experienced, Owner/CEO Jenson acknowledged that Kenneth Kvol was a "jerk" and an "asshole."

48.     Despite Jenson's acknowledgment of Kenneth Kvol's inappropriate behavior, Defendant Amada took no prompt and appropriate corrective action to respond to this harassment of Ms. Pettigrew or of other female employees.

       **d.**     **Defendant Amada's Reassignment and Discharge of Ms. Pettigrew**

49.     In or around August 2014, Defendant Amada reassigned Ms. Pettigrew to other duties and/or work environments.

50.     Following her reassignment, Ms. Pettigrew continued to complain to Defendant Amada's management-level employees, including Owner/CEO Jenson, about Kenneth Kvol's sexually harassing behavior.

51.     Ms. Pettigrew continued to complain about Kenneth Kvol's sexually harassing behavior because she was hoping to prevent other female employees from being subjected to Kenneth Kvol's behavior.

52.     Defendant Amada failed to respond adequately and promptly to Ms. Pettigrew's continued complaints.

53.     When Defendant Amada failed to respond adequately and promptly to her continued complaints, Ms. Pettigrew informed Defendant Amada that she was considering reporting Kenneth Kvol's inappropriate behavior to government authorities.

54.     In approximately late-November or early-December 2014, Defendant Amada, acting through its agents or employees, directed Ms. Pettigrew to take time off.

55.     Shortly thereafter, Defendant Amada discharged Ms. Pettigrew.

56.     Defendant Amada discharged Ms. Pettigrew in retaliation for her protected conduct in opposing sexual harassment.

**II.      Facts Relevant to Danielle Millar and Other Female Employees**

57.      In addition to Ms. Pettigrew, Kenneth Kvol sexually harassed one or more other female employees of Defendant Amada, including Danielle Millar (f/k/a Danielle Halpern).

58.      Defendant Amada knew or should have known about this sexual harassment, but failed to respond adequately and promptly to it.

**a.      Background Relevant to Ms. Millar**

59.      Ms. Millar was hired by Defendant Amada on or about June 16, 2014.

60.      Ms. Millar was employed by Defendant Amada as a Personal Care Worker or substantially similar position.

61.      In her job with Defendant Amada, at all relevant times Ms. Millar provided in-home personal care to clients of Defendant Amada.

62.      At all relevant times during her employment, Defendant Amada assigned the clients to whom Ms. Millar was required to provide in-home services, and Defendant Amada directed the locations in which Ms. Millar was required to work.

63.      In approximately June 2014, Defendant Amada assigned and directed Ms. Millar to provide in-home services to Donald Kvol and/or Eileen Kvol, in the home where Kenneth Kvol resided and was frequently present.

64.      At all relevant times while Ms. Millar was in the home of Donald Kvol and Eileen Kvol, she was performing her usual job functions.

65.      At all relevant times while Ms. Millar was in the home of Donald Kvol and Eileen Kvol, she was there at Defendant Amada's direction and it was her assigned work location.

66.     As part of her regular and required job duties, Ms. Millar was required to enter the Kvols' home and to interact with Kenneth Kvol.

**b. Workplace Sexual Harassment of Ms. Millar**

67.     Soon after Defendant Amada assigned Ms. Millar to work in the Kvols' home, Kenneth Kvol began a pattern of persistent, aggressive, and offensive sexual harassment of Ms. Millar.  In particular:

a.  Kenneth Kvol frequently made sexual remarks directed at Ms. Millar, such as commenting on the size of her breasts.

b.  On one occasion when Ms. Millar indicated that her back hurt, Kenneth Kvol commented "no wonder why – your tits are the size of my head."

c.  On another occasion, Kenneth Kvol touched Ms. Millar without her permission and told her he thought there was "a lot of sexual tension between us."

d.  On yet another occasion, Kenneth Kvol told Ms. Millar that a bedroom she had just cleaned would "look better with you on the bed."

e.  Kenneth Kvol also frequently physically harassed or assaulted Ms. Millar.

f.  Kenneth Kvol often snuck up behind Ms. Millar and put his arms around her without her consent, and otherwise touched her unexpectedly.

g.  Kenneth Kvol frequently brushed his hands across Ms. Millar's breasts and buttocks.

h.  On at least one occasion, Kenneth Kvol physical cornered Ms. Millar.

i.  On at least one occasion, Kenneth Kvol snuck up behind Ms. Millar and rubbed his genitals against her buttocks.

68.     Kenneth Kvol's comments and conduct directed at Ms. Millar, as more specifically alleged above, were of a sexual nature and directed at her because of her sex.

69.     Kenneth Kvol's comments and conduct directed at Ms. Millar, as more specifically alleged above, were unwelcome.

70.     Kenneth Kvol's comments and conduct directed at Ms. Millar, as more specifically alleged above, were offensive to Ms. Millar.

71.     Kenneth Kvol's comments and conduct directed at Ms. Millar, as more specifically alleged above, are offensive to a reasonable woman.

72.     Kenneth Kvol's comments and conduct directed at Ms. Millar, as more specifically alleged above, occurred while she was working within the scope of her employment as a personal care worker for Defendant Amada.

73.     Kenneth Kvol's comments and conduct directed at Ms. Millar, as more specifically alleged above, occurred in her work environment, where Defendant Amada assigned and required her to work.

74.     Kenneth Kvol's comments and conduct directed at Ms. Millar, as more specifically alleged above, were pervasive, in that they occurred regularly and frequently.

75.     Some or all of Kenneth Kvol's comments and conduct directed at Ms. Millar— *e.g.* grabbing her body, touching her with his genitals, and physically cornering and constraining her—were sufficiently severe that even a single instance was sufficient to alter the terms and conditions of her employment and thereby create a hostile work environment.

    **c.**    **Ms. Millar's Reporting to Defendant & Defendant's Failure to Respond**

76.    Ms. Millar repeatedly reported Kenneth Kvol's comments and conduct, as more specifically alleged above, to Defendant Amada, including to management-level employees.

77.    In particular, beginning in approximately June 2014, Ms. Millar reported the above-described harassment by Kenneth Kvol to Defendant Amada's Office Manager, Ms. Desiree Lister.

78.    Further, on at least one occasion, Ms. Millar orally reported the above-described harassment to Defendant Amada's Owner and Chief Executive Officer, Mr. Kenneth Jenson.

79.    In addition, on or around August 1, 2014, Ms. Millar sent an e-mail to Office Manager Lister stating, in part:

> I am writing this email to inform you why I requested not to return to the Kvols' home. [Kenneth Kvol] was very inappropriate and I no longer felt comfortable in the home. On a few occasions he walked around with his privates exposed. Despite me telling him that it was inappropriate, it continued to happen. He made comments to me that he felt there was a "mutual attraction" between the two of us. I explained that under no circumstances was I attracted to anything about him.

80.    In the August 1, 2014 e-mail, Ms. Millar also informed Office Manager Lister that she "didn't feel safe" around Kenneth Kvol.

81.    As a result of Ms. Millar's reports to Office Manager Lister and Owner/CEO Jenson, Defendant Amada knew or should have known of Kenneth Kvol's inappropriate conduct.

82.    As a result of Ms. Millar's reports to Office Manager Lister and Owner/CEO Jenson, Defendant Amada knew or should have known that Ms. Millar was being sexually harassed in her workplace.

83.    As a result of Ms. Millar's reports to Office Manager Lister and Owner/CEO
Jenson, Defendant Amada knew or should have known that the environment in which Defendant
Amada required Ms. Millar to work was a hostile work environment.

84.    On at least one occasion when Ms. Millar reported Kenneth Kvol's conduct,
Owner/CEO Jenson told her he had spoken with Kenneth Kvol and/or Donald Kvol and Jenson
gave her assurances that the harassment would stop.

85.    Despite these assurances, Kenneth Kvol's harassment of Ms. Millar, as more
specifically alleged above, continued.

86.    Despite Ms. Millar's reports, Defendant Amada took no prompt or appropriate
corrective action to halt or rectify the sexual harassment of Defendant Amada's female
employees.

**d. Retaliation & Constructive Discharge**

87.    After Ms. Millar reported Kenneth Kvol's sexual harassment to Defendant
Amada, including the e-mail Ms. Millar sent to Office Manager Lister on August 1, 2014,
Defendant Amada removed Ms. Millar from the schedule and did not assign her any caregiver
work for approximately three weeks in August 2014.

88.    Beginning in September 2014, Defendant Amada again reassigned Ms. Millar to
work in the Kovls' home, despite her e-mail of August 1, 2014.

89.    Defendant Amada knew or should have known that by requiring Ms. Millar to
return to the same work environment, she would be required to interact with Kenneth Kvol.

90.     Defendant Amada knew or should have known that by requiring Ms. Millar to return to the same work environment, Defendant Amada was requiring her to work in a hostile work environment.

91.     After Ms. Millar was reassigned to work in the Kvols' home in September 2014, Kenneth Kvol's offensive sexual comments and conduct directed at Ms. Millar continued.

92.     After Ms. Millar was reassigned to work in the Kvols' home in September 2014, Ms. Millar continued to complain to Defendant Amada about Kenneth Kvol's offensive sexual comments and conduct.

93.     Despite Ms. Millar's repeated reports that she was experiencing egregious and persistent workplace sexual harassment—including reporting to Defendant Amada that Kenneth Kvol had exposed his penis to her, touched her sexually and against her will, and touched her with his genitals—Defendant Amada required her to return to the same hostile work environment, knowing she would be subjected to continued sexual harassment.

94.     Upon information and belief, other female employees of Defendant Amada also observed Kenneth Kvol engaging in inappropriate behavior in their work environment and while they were performing assigned work duties.

95.     Defendant Amada failed to appropriately respond to Ms. Millar's reports of workplace sexual harassment.

96.     Despite Ms. Millar's reports of workplace sexual harassment, she was told by Defendant Amada that if she did not return to working in the Kvols' home with Kenneth Kvol, she would be punished, including by being denied other work assignments.

97.     In approximately October 2014, Ms. Millar ceased accepting work assignments from Defendant Amada.

98.     Ms. Millar ended her employment with Defendant Amada because Defendant failed to respond promptly or appropriately to her repeated reports of Kenneth Kvol's sexual harassment.

**FIRST CLAIM FOR RELIEF**
**Discrimination Based on Sex – 42 U.S.C. § 2000e-2(a)**
**(Sexual Harassment / Hostile Work Environment)**

99.     All allegations set forth above are hereby incorporated by reference.

100.     Since at least June 2014, Defendant Amada has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating and/or tolerating a work environment hostile to women because of their sex, female.

101.     Since at least June 2014, Defendant Amada subjected its female employees, including but not limited to Lemayia Pettigrew and Danielle Millar, to a hostile work environment based on their sex.

102.     Defendant Amada controlled the conditions of its employees' work environment by—for example and without limitation:  assigning and directing the clients or customers with whom employees were required to interact; assigning and directing the locations where employees were required to work; negotiating and/or failing to negotiate appropriate terms and conditions for employees' interactions with clients or customers, their family members, and/or others with whom employees were required to interact; and by directing female employees to work with one or more known harassers, and in hostile work environments, as more specifically alleged above.

103.     As more specifically alleged above, the conduct to which Defendant Amada's female employees were subjected was unwelcome.

104.     As more specifically alleged above, the conduct to which Defendant Amada's female employees were subjected was offensive.

105.     As more specifically alleged above, the conduct to which Defendant Amada's female employees were subjected was sexual in nature and/or was directed at them because of their sex.

106.     As more specifically alleged above, the conduct to which Defendant Amada's female employees were subjected was sufficiently severe or pervasive that it altered the terms and conditions of their employment and created a hostile work environment.

107.     Defendant Amada's female employees, including but not necessarily limited to Lemayia Pettigrew and Danielle Millar, reported the sexual harassment and hostile work conditions to management-level employees of Defendant Amada.

108.     Defendant Amada knew or should have known of the sexual harassment, hostile work environment, and the conduct to which Defendant Amada's female employees were subjected.

109.     Defendant Amada failed to implement any prompt appropriate corrective actions and Defendant Amada did not adequately respond to its female workers' reports and complaints of harassment and a hostile work environment.

110.     To the contrary, Defendant Amada condoned and/or tolerated the hostile work environment, including, without limitation, by failing to take prompt and appropriate corrective

action, and by requiring female employees to return to the hostile environment despite

knowledge of the egregious and persistent sexual harassment they would face.

111.    The effect of the practices complained of above has been to deprive Defendant

Amada's female employees, including but not limited to Lemayia Pettigrew and Danielle Millar,

of equal employment opportunities and otherwise adversely affect their status as employees

because of their sex, female.

112.    The unlawful employment practices complained of above were knowing.

113.    The unlawful employment practices complained of above were intentional.

114.    The unlawful employment practices complained of above were done with malice

and/or with reckless indifference to the federally protected rights of Defendant Amada's female

employees, including but not limited to Lemayia Pettigrew and Danielle Millar.

## SECOND CLAIM FOR RELIEF
### Retaliation – 42 U.S.C. § 2000e-3(a)

115.    All allegations set forth above are hereby incorporated by reference.

116.    Since at least June 2014, Defendant Amada has engaged in unlawful employment

practices in violation of Section 704(a) of Title VII, 42 U.S.C. §§ 2000e-3(a), by retaliating

against employees, including but not limited to Lemayia Pettigrew and Danielle Millar, because

they opposed unlawful workplace sexual harassment.

117.    As more specifically alleged above, since at least June 2014, Defendant Amada's

female employees, including but not limited to Lemayia Pettigrew and Danielle Millar,

complained to Defendant Amada about and otherwise opposed the sexual harassment and hostile

work environment alleged herein.

118.     As more specifically alleged above, Defendant Amada took actions against its female employees, including but not limited to Lemayia Pettigrew and Danielle Millar, that reasonable employees would have found materially adverse.  These actions included, without limitation, discharge, constructive discharge, subjecting employees to reductions or changes in job assignments, or subjecting them to other adverse employment actions.

119.     Defendant Amada took some or all of the adverse employment actions because of the protected activities of its female employees, including but not limited to Lemayia Pettigrew and Danielle Millar.

120.     The effect of the practices complained of above has been to deprive Defendant Amada's female employees, including but not limited to Lemayia Pettigrew and Danielle Millar, of equal employment opportunities, and to otherwise adversely affect their status as employees because they opposed unlawful employment practices.

121.     The unlawful employment practices complained of above were intentional.

122.     The unlawful employment practices complained of above were done with malice and/or with reckless indifference to the federally protected rights of Defendant Amada's female employees, including but not limited to Lemayia Pettigrew and Danielle Millar.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant Amada, its officers, agents, servants, employees, successors, assigns and all persons in active concert or participation with it, from engaging in any practice that permits the harassment of employees because of sex and any other employment practice which discriminates on the basis of sex.

B.      Grant a permanent injunction enjoining Defendant Amada, its officers, agents, servants, employees, successors, assigns and all persons in active concert or participation with it, from engaging in any practice that permits retaliation against employees because they opposed unlawful employment practices, made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII.

C.      Order Defendant Amada to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and for individuals who oppose unlawful employment practices and which eradicate the effects of DefendantAmada's past and present unlawful employment practices, including sex discrimination and retaliation.

D.      Order Defendant Amada to make whole Lemayia Pettigrew and other aggrieved female employees, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or frontpay.

E.      Order Defendant Amada to make whole Lemayia Pettigrew and other aggrieved individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses or medical expenses, in amounts to be determined at trial.

F.      Order Defendant Amada to make whole Lemayia Pettigrew and other aggrieved individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and other nonpecuniary losses, in amounts to be determined at trial.

G.      Order Defendant Amada to pay Lemayia Pettigrew and other aggrieved individuals punitive damages for its unlawful employment practices described above, carried out with malice or reckless disregard for the federally protected rights of its employees, in amounts to be determined at trial.

H.      Grant and Order appropriate declaratory relief.

I.      Grant such further relief as the Court deems necessary and proper in the public interest.

J.      Award the Commission its costs in this action.

## **JURY TRIAL DEMANDED**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted, August 8, 2018.

MARY JO O'NEILL
Regional Attorney

RITA BYRNES KITTLE
Supervisory Trial Attorney

*s/ Michael Imdieke*
Michael Imdieke
Trial Attorney
U.S. Equal Employment Opportunity
Commission-Denver
303 East 17th Avenue
Suite 410
Denver, CO 80203-9634

Attorneys for Plaintiff

**PLEASE NOTE:**

**For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorney(s).  Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.**