**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-02026-RBJ

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

JOYVIDA, LLC d/b/a AMADA SENIOR CARE,

      Defendant.

---

**CONSENT DECREE**

---

**I. RECITALS**

**1.**      This matter was instituted by Plaintiff Equal Employment Opportunity Commission ("Commission" or "Plaintiff" or "EEOC"), an agency of the United States government, alleging that Defendant subjected female employees to a sexually hostile work environment by failing to promptly and adequately respond to alleged sexual harassment of certain of its female employees and retaliated against those female employees when they reported the sexual harassment to Defendant.

**2.**      The Defendant denies the allegations and claims made. Defendant does not admit liability for the actions described in the EEOC's lawsuit, but is agreeing to this resolution for business purposes.

**3.**      The Parties to this Decree are the Plaintiff EEOC and Defendant Joyvida d/b/a Amada Senior Care.

**4.**      The Parties, desiring to settle this action by a reasonable, fair and appropriate

Consent Decree ("Decree"), agree to the jurisdiction of this Court over the Parties and the subject matter of this action with respect to this Consent Decree and its enforcement, and agree to the power of this Court to enter a Consent Decree enforceable against Defendant.

5.      As to the issues resolved, this Decree is final and binding upon the Parties and their successors and assigns during the term provided in paragraph 8 below.

6.      For the purpose of amicably resolving disputed claims, the Parties jointly request this Court to adjudge as follows:

**IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

**II. JURISDICTION**

7.      The Parties stipulate to the jurisdiction of the Court over the Parties and subject matter for purposes of the consideration and enforcement of this Consent Decree and have waived the entry of findings of fact and conclusions of law.

**III. TERM AND SCOPE**

8.      **Term:**  The duration of this Decree shall be 3.5 years from the date of signing by the Court.

9.      **Scope:** The terms of this Decree shall apply to Defendant's offices located at: 1605 Elm Creek View, Suite 100, Colorado Springs, CO 80907; 755 Hwy 105, Suite D, Palmer Lake, CO 80133; and 275 S. Jay Street, Suite A, Lakewood, CO 80226; and Defendant's operations in locations for which it provides services in Colorado.

10.     Nothing in this decree is intended to modify any obligation under HIPAA.

**IV. ISSUES RESOLVED**

**11.**     This Decree fully resolves the claims alleged in the above-captioned lawsuit and

constitutes a complete resolution of all of the Commission's claims of unlawful

employment practices under Title VII of the Civil Rights Act of 1964 ("Title VII"), that

arise from the original Charge of Discrimination Number 541-2015-01429, filed by

Lemayia Pettigrew.

**12.**     Defendant and its officers, agents, employees, and successors will not interfere

with the relief herein ordered, but shall cooperate in the implementation of this Decree.

**V. MONETARY RELIEF**

**13.**     The Parties agree that Defendant shall pay the total amount of $250,000, which

will fully and finally resolve this matter as to monetary relief.

**14.**     Defendant will not condition the receipt of individual relief upon the aggrieved

individuals' agreement to: (a) maintain as confidential the terms of this Decree or the

facts of the case; (b) waive their statutory right to file a charge with any federal or state

anti-discrimination agency; or (c) promise not to reapply for a position at any of

Defendant's facilities.

**15.**     The settlement amount will be distributed by Defendant to the individuals on a

distribution list to be provided to Defendant by the EEOC within 10 calendar days of

entry of this Decree. Within 21 days from the date it receives EEOC's distribution list, all

signed Releases as described in Attachment C to this Decree, and/or any necessary W-

4s or W-9s relating to the individuals to which monetary relief will be afforded,

Defendant will mail the checks to the individual payee addresses as provided in the

EEOC's distribution list. The EEOC shall be responsible for and shall retain all discretion to allocate the total settlement amount to the individuals who will be receiving monetary relief.

**16.**    Defendant is responsible for withholding payroll taxes from back pay amounts using a newly submitted W-4 from the individual obtaining back pay, paying withheld funds to the IRS, and paying the employer's share of payroll taxes. Defendant will provide tax reporting forms to each payee who receives payment under this Decree, including W-2s and 1099 forms required to be sent to the payees, no later than January 31, 2022.

**17.**    Within three business days after payments are mailed to payees, Defendant shall submit to the EEOC a copy of each check issued.

**18.**    Prior to mailing any settlement check(s) to the individuals receiving any monetary relief as part of this resolution, the individuals will execute a Release in the form attached as Exhibit C to this Decree.  The EEOC will provide signed copies of Exhibit C to Amada with the distribution list.

## VI. OTHER INDIVIDUAL RELIEF

**19.**    Defendant shall expunge from Charging Party Lemayia Pettigrew's, Danielle Millar's, Regina English's, Sharon Mushak's, and Yesenia Rodriguez's personnel files, to the extent such information exists in the individuals' personnel file: (a) any and all references to the allegations of discrimination filed against Defendant that formed the basis of this action; (b) any and all references to the aggrieved individuals' participation in this action; and (c) any and all documents that refer, make reference to, or relate to

any alleged performance deficiencies documented after Lemayia Pettigrew filed a charge of discrimination.

20.     Within ten days after entry of this Decree, Defendant shall provide a letter of acknowledgment to the Charging Party and aggrieved individuals on company letterhead in the form attached as Exhibit A.

## VII. EQUITABLE RELIEF

### A.     *Injunctive Relief*

21.     Defendant, its officers, agents, and successors are enjoined for the duration of the Decree from engaging in any employment practice which creates a hostile work environment on the basis of sex, including failing to promptly address and remedy environments of which Defendant has actual or constructive notice have become hostile due to unwelcome sexual comments and conduct in the workplace.

22.     Defendant, its officers, agents, and successors are enjoined for the duration of the Decree from engaging in reprisal or retaliation of any kind as legally defined against any employee or person because of such person's opposition to any practice made unlawful under Title VII, as amended, or because the person's statements serve as the basis of a charge of discrimination; or because such person testifies or participates in the investigation or prosecution of an alleged violation of Title VII; and/or because such person or employee was identified as a witness in this action or who assisted in the investigation giving rise to this action.

23.     **Retention of Outside Consultant(s):** Within thirty (30) calendar days of the entry of this Decree, Defendants shall retain an outside consultant or consultants, as

appropriate, who are not employed by Defendant. The Consultant(s) selected will have experience in employment law and preferably will also have experience in the provision of advice or services in the memory care industry.  Nothing in this provision precludes Defendant from utilizing qualified current employees in assisting the Consultant in the discharge of his or her duties. The Consultant(s) will be selected by Defendant, subject to the EEOC's approval. In the event the EEOC and Defendant cannot agree upon a Consultant or Consultants within thirty (30) calendar days after entry of this Decree, the EEOC will provide Defendant with a list of at least three candidates, from which Defendant shall select the Consultant or Consultants.

24.     **Replacement of Consultant:** In the event a Consultant is unable or unwilling to continue to serve in the role, Defendant shall select a new Consultant, subject to the EEOC's approval. If Defendant and the EEOC cannot agree upon a Consultant within thirty (30) calendar days after notice of the need to replace the Consultant, Defendant will provide the EEOC with a list of at least three replacement candidates, from which the EEOC will select the Consultant.

25.     **Compensation of Consultant:** Defendant shall compensate the Consultant(s) at an agreed-upon rate and shall reimburse the Consultants' reasonable expenses. Defendant shall also pay all reasonable costs necessary to fulfill the Consultants' work.

26.     **Cooperation:** The Consultant(s) shall, to the maximum extent practicable and consistent with the Consultant's obligations, work cooperatively with Defendant to not

unduly interfere with Defendant's operations. Defendant agrees to cooperate with the Consultant(s), to the maximum extent practicable.

27.     **Access to Information:** The Consultant(s) shall have access to relevant documents, and other sources of information necessary to fulfill his or her duties under this Decree. The Consultant(s) shall have access to review all non-privileged records.

B.  *EEO Policy Review and Revisions*

28.     Within 60 days of the entry of this Decree, Defendant shall, in consultation with an Outside Consultant chosen and hired by the Defendant in accord with Paragraphs 23-27 of this Decree, review the Defendant's existing EEO policies and Defendant's policies relating to sexual harassment and, if necessary, revise those policies as recommended by the consultant(s) hired by the Defendant.

29.     The Defendant's revised written EEO policies must include at a minimum:

29.1.    A provision describing Defendant's prohibition of unlawful sex discrimination, including sexual harassment by employees, non-employees who interact with employees, clients, and clients' family members who receive, are involved with, are responsible for, or are present for caregiver services;

29.2.    A provision describing Defendant's prohibition of retaliation within the meaning of Title VII;

29.3.    Definitions and examples of disparate treatment based on sex, including sexual harassment, and retaliation;

29.4.    A statement that discrimination based on sex, sexual harassment, and retaliation is prohibited and will not be tolerated;

**29.5.**  A provision that advises individuals who believe they have been discriminated against, harassed, or retaliated against as to their rights to report such concerns;

**29.6.**  The identification of specific individuals, with appropriate contact information, to whom employees can report their concerns about discrimination, harassment, or retaliation;

**29.7.**  The identification of alternative, specific individuals, with appropriate contact information, to whom employees can report concerns of discrimination, harassment, or retaliation in the event an employee does not feel comfortable sharing his or her concerns with the individuals specifically identified in Paragraph 29.6 above;

**29.8.**  A clear explanation of the steps an employee must take to report discrimination, harassment, or retaliation, which must include the options of either an oral or written complaint;

**29.9.**  An assurance that Defendant will investigate allegations of any complaint of unlawful discrimination or retaliation and that such investigation will be completed promptly and fairly, and, if appropriate, conducted by an objective outside investigator specifically trained in receiving, processing, and investigating allegations of discrimination;

**29.10.** A provision that Defendant takes its obligations with respect to anti-discrimination, anti-harassment and anti-retaliation seriously and will use its best efforts to ensure its workplace complies with the law;

**29.11.** A provision stating potential consequences of any investigative determination that discrimination, harassment or retaliation has occurred, including that employees engaging in such improper conduct could be disciplined up to and including termination of employment, and that clients may be discharged depending on the circumstances of at issue;

**29.12.** A provision advising employees that any complaint of or participation in the investigation of any claim of discrimination, harassment or retaliation will be kept confidential to the extent possible; and

**29.13.** A provision advising employees that Defendant prohibits retaliation toward any employee or individual who reports unlawful discrimination, harassment, and/or retaliation, and for witnesses who provide testimony or assistance in the investigation(s) of such unlawful discrimination, harassment, and/or retaliation.

**30.** Within 21 days after completion of the policy review required under paragraphs 28-29 above, the Defendant's Employee Handbook and all EEO and anti-sexual harassment policies shall be distributed to all current employees and written confirmation of the employee's review and understanding of the policies will be collected. Defendants will also maintain a current copy of its Employee Handbook, EEO policy, and anti-harassment policies for employees at each of its office locations. The Defendant's Employee Handbook, EEO policy and anti-harassment policies will be distributed to all new employees within three days of their start date if possible, but no later than the date of all new employees' attendance at orientation training. Within 10 days of distributing the Defendant's Employee Handbook, EEO policy and anti-

harassment policies to all current employees, Defendant will provide a copy of the policies to the EEOC. Within thirty days after revising any policies related to sexual harassment, those sexual harassment-related policies will be further distributed to all current clients as appropriate, and Amada's Point of Contact for its clients. Should Amada be informed by the Point of Contact and/or client that an individual or individuals are residing in the client's home, Amada will also provide such individual(s) with its sexual harassment policy.

**B.**     *Training*

**31.**     For the term during which this Decree is effective, the Defendant will hold semi-annual EEO trainings which will be offered to all its employees in Colorado. The trainings will be conducted either in person or by virtual presentation, and will focus on the rights of employees and the rights and responsibilities of employers under Title VII and other federal anti-discrimination statutes. The semi-annual trainings shall be at Defendant's expense. The semi-annual trainings will be planned and presented by a qualified employment and/or human resources professional, who may be employed by the Defendant, and will include such topics and discussions as follows:

**31.1.**   The rights and responsibilities of employees and employers under Title VII;

**31.2.**    sexual harassment under Title VII, including the rights and responsibilities of employers concerning complaints of sexual harassment;

**31.3.**   Reporting discrimination, harassment or retaliation when an employee is the subject of such conduct or has witnessed such conduct;

**31.4.**   Retaliation, including definitions and examples of retaliation that may occur in the workplace and rights and responsibilities of both employees and employers, including a discussion of retaliation for participation in an investigation and/or hearing concerning employment discrimination.

**31.5.**   How to properly handle employees' discrimination and harassment complaints; and

**31.6.**   A discussion of Defendant's EEO and harassment policies.

32.   Training with respect to the following employee groups shall be held and will be mandatory as follows:

**32.1.   Non-managerial Employees:**  Defendant will provide non-managerial employees training on Title VII for at least two (2) hours per year during the term of this Decree, which may occur in two semi-annual sessions. Such training shall specifically discuss Defendant's policies and procedures for reporting instances of discrimination, harassment, and/or retaliation. Additionally, at least fifty percent of the training provided to non-managerial employees shall address sexual harassment that violates Title VII and how to report such harassment.

**32.2.   Owner, Office Manager, Department Managers, Human Resource Employees**:  Defendant will require all individuals who work as Department Managers and the office manager, along with the owner, any Human Resources Manager or Human Resources employees, and any other employees responsible for receiving or processing complaints of discrimination and/or retaliation, to receive at least four (4) hours of training annually regarding Title VII and other

federal anti-discrimination laws. Defendant may provide this four (4) hours of training in semi-annual sessions or other schedule to accommodate business operations as long as the four (4) hours is completed in each year of the Decree. Such trainings should include discussion of sex discrimination, including sexual harassment, and retaliation, and instruction in the proper methods of receiving, communicating, investigating (where applicable), and handling complaints and issues of any reported or investigated discrimination and/or retaliation. Additionally, Defendant will require any employees who are newly hired or recently promoted into these positions to complete at least two (2) hours of training on the topics in this paragraph no later than three months after moving into the position.

32.3.   **Training on Investigative Techniques:**  The Office Manager and the Human Resources Supervisor or employees with responsibility for responding to or investigating complaints of discrimination shall be provided two (2) additional hours of annual training on accepted professional standards for receiving and investigating complaints of discrimination, including such matters as witness interview techniques, other information-gathering techniques, maintaining investigative notes and records, and methods for handling any violations of Title VII or the Defendant's policies prohibiting discrimination, harassment or retaliation.

**33.**   Defendant agrees that the first such training session for each employee group identified in the paragraph above will take place within 60 days after the Court's entry of

this Decree. In the first year of the Decree, Defendant agrees that it will offer that training to all employees, and require that the Owner, office manager, and department managers attend.  Thereafter, the Defendant will conduct its semi-annual training for each employee group described above.

**34.**     The Commission may designate one representative to attend any of the training sessions described above if notice is provided to the Defendant's office manager by email at least one week before the scheduled training, and the Commission representatives shall have the right to attend, observe, and fully participate in the training attended.

**35.**     Defendant will provide the Commission 14 days' notice of the date of its first training sessions following the entry of this Decree, and will subsequently provide the Commission with a schedule of remaining training sessions that will occur each year approximately six months apart through the duration of this agreement.

**C.      *Caregiver Training on Memory-Care Clientele***

**36.**     Defendant shall, in consultation with the Consultant, review its existing training relating to care of memory-care clients, if any, and revise that training in accordance with the recommendations of the Consultant.

**37.**     Beginning no later than 30 days after entry for the Decree and for the duration of the Decree, newly hired caregivers will be provided at least one (1) hour of training related to care of clients with Alzheimer's, dementia, or other memory-care conditions. Such training will occur during new hire orientation and must take place prior to the caregiver being assigned to care for a client with Alzheimer's, dementia, or other

memory-care conditions. This new hire orientation training at a minimum must include:

    **37.1.**  Identify and discuss inappropriate sexual behavior caregivers may encounter when caring for clients with Alzheimer's disease, dementia, or other memory-care conditions;

    **37.2.**  Discuss in detail best practices caregivers may utilize to respond to inappropriate sexual behavior that may be exhibited by memory care clients;

    **37.3.**  Identify and discuss care plans and other care-related materials, information, and resources that will be provided to caregivers a reasonable time prior, given the circumstances, to caring for memory-care client(s) who may exhibit inappropriate sexual behavior;

    **37.4.**  Identify and discuss avenues available to caregivers to address or report inappropriate sexual behavior exhibited by memory care clients; and

    **37.5.**  Identify and discuss appropriate progressive actions Defendant will take in response to caregiver reports of inappropriate sexual behavior, up to and including terminating caregiving services and/or a referring the client to alternative care options.

**38.**  For the duration of the Decree, Caregivers hired after the entry of the Decree and who will care for clients with Alzheimer's, dementia, or other memory-care conditions, will be provided an additional one (1) hour of training, which can include virtual training, related to care of clients with Alzheimer's, dementia, or other memory-care conditions within 90 days of being hired.

**39.**  Within 120 days of entry of the Decree, caregivers who are employed prior to the

entry of the Decree and who care for or will care for clients with Alzheimer's, dementia, or other memory-care conditions, will be provided two (2) hours of training related to care of clients with Alzheimer's, dementia, or other memory-care conditions. One (1) hour of this training can include viewing a recording of the new hire orientation as provided under Paragraph 36. The additional one (1) hour of this training may include virtual training.

### D.    *Notice Posting*

**40.**    Within five business days after the Court's entry of this Decree, Defendant shall post in each of its Colorado office locations, in a conspicuous place frequented by employees, the Notice attached as Exhibit B to this Decree.  The Notice shall be the same type, style, and size as set forth in Exhibit B, but enlarged to at least 16" x 24". The Notice shall remain posted for the duration of this Decree.  If the Notice becomes defaced or illegible, Defendant will replace it with a clean copy.  Defendant shall certify to the Commission, in writing, within ten days of entry of this Decree that the Notice has been properly posted and shall provide recertification in each of the semi-annual reports required under the Reporting provisions of this Consent Decree. In addition, within thirty (30) days of entry of the Decree, Defendant shall distribute the Notice attached as Exhibit B to each current caregiver employee and shall thereafter distribute the Notice to each new caregiver employee hired for the duration of the Decree.

## VIII.  RECORDKEEPING AND REPORTING PROVISIONS

**41.**    For the duration of the term of this Consent Decree, Defendant's office manager shall maintain all records concerning implementation of this Consent Decree including

records reflecting all oral and written complaints of discrimination, including but not limited to sex discrimination and retaliation, and records documenting investigation of such complaints, including witness statements, documents compiled, conclusions and findings, and any corrective and remedial actions taken.

42.     Defendant shall provide the Commission with semi-annual reports for each six-month period following the entry of this Decree.  The reports shall be due 30 days following the respective six-month period, except the final report which shall be submitted to the Commission six weeks prior to the date on which the Consent Decree is to expire.

43.     **Reporting Requirements:**  Each report shall provide the following information:

    43.1.  **Complaints of Discrimination**

        43.1.1.     For purposes of this Paragraph, the term "complaint of sex discrimination" will include any written or verbal complaint made to a manager or of which a manager is aware which alleges discrimination, or the witnessing of discrimination, based on sex, including sexual harassment, even if such terminology is not used by the complainant. The complainant need not invoke the terms "discrimination," "Title VII," "disparate treatment," "violation," or "rights," etc. Employees are not trained in legalese and frequently use such terms as "unfair," "unprofessional," "uncomfortable," "unjust," "retaliatory," "treated differently," or "disciplined without or for no reason" and other such language that indicates an allegation of sex discrimination. Regardless of

whether the complaint is made orally or in writing, the report will include:

**43.1.1.1.**      The name, address, email address, and telephone number of each person making a complaint of sex discrimination to Defendant or to any federal, state, or local government agency;

**43.1.1.2.**      A brief summary of each complaint, including the date of the complaint, the name of the individual(s) who allegedly engaged in the discriminatory conduct, the Defendant's investigation and response to the complaint, the name of the person who investigated or responded to the complaint, and what if any resolution was reached.

**43.2. Complaints of Retaliation**

**43.2.1.**      For purposes of this Paragraph, the term "complaint of retaliation" will include any written or verbal complaint which alleges retaliation for activity that is protected under Title VII, or alleges retaliation for conduct which Defendant recognizes or should have recognized as protected activity under Title VII even if the complainant does not use legal or technical terminology.

**43.2.2.**      The report shall include:

**43.2.2.1.**      The name, address, email address, and telephone number of each person making a complaint of retaliation to Defendant or to any federal, state, or local government agency;

**43.2.2.2.**      A brief summary of each complaint, including the date

of the complaint, the name of the individual(s) who allegedly engaged in the retaliatory conduct, Defendant's investigation and response to the complaint, the name of the person who investigated or responded to the complaint, and what if any resolution was reached;

43.3. **Training**

    **43.3.1.**    For each training program required under Paragraphs 31-33 of this Decree, and conducted during the reporting period, Defendant shall submit a registry of attendance and/or certificates of completion for all individuals attending or completing the training.

    **43.3.2.**    For each training program conducted by an outside consultant or vendor not affiliated with Defendant, Defendant will identify the consultant and/or vendor and provide a copy of the program agenda.

    **43.3.3.**    For each training required under Paragraphs 36-39 conducted during the reporting period, Defendant shall submit a registry of attendance and/or certificates of completion for all individuals attending or completing the training.

43.4. **Posting of Notice**:  Defendant shall certify to the Commission that the Notice required to be posted under this Consent Decree has remained posted during the reporting period, or, if removed, was promptly replaced. Defendant shall also certify that the Notice required to be distributed to caregiver employees was distributed according to the terms of this Decree.

**43.5.   Policy Review**:  Defendant shall report on the status of the EEO policy and anti-harassment policy reviews and distribution required under this Decree. Defendant shall certify that they have provided their current EEO and anti-harassment  policies to the EEOC.

44.      Within 30 days after the date the Court signs this Decree, Defendant shall certify to the Commission that any personnel records as provided in Paragraph 19 of this Decree have been expunged.

45.      Within 30 days after the date the Court signs this Decree, Defendant shall certify to the Commission that the letters of acknowledgement required by Paragraph 20 of this Decree have been provided to the Charging Party and aggrieved individuals.

### IX. RETENTION OF JURISDICTION AND ENFORCEMENT OF DECREE

46.      This Court shall retain jurisdiction of this cause for purposes of compliance with this Decree and entry of such further orders or modifications as may be necessary or appropriate to effectuate the terms and conditions of this Decree.

47.      There is no private right of action to enforce Defendant's obligations under the Decree and only the Commission, or its successors or assigns, may enforce compliance herewith.

48.      The EEOC may petition this Court for compliance with this Decree at any time during which this Court maintains jurisdiction over this action. However, prior to petitioning the Court, the EEOC will give Defendant notice of the allegations of non-compliance, followed by a thirty (30) day period to either cure the deficiency or negotiate a resolution of the non-compliance. Should the Court determine that Defendant has not complied with

this Decree, appropriate relief, including extension of this Decree for such period as may be necessary to remedy its non-compliance, may be ordered.

49.     Absent extension, this Decree shall expire by its own terms at the end of the 42nd month from the date of entry without further action by the Parties.

## X. EEOC AUTHORITY

50.     With respect to matters or charges outside the scope of this Decree, this Decree shall in no way limit the powers of the Commission to seek to eliminate employment practices or acts made unlawful by any of the statutes over which the EEOC has enforcement authority, and do not arise out of the claims asserted in this lawsuit.

## XI. COSTS AND ATTORNEY FEES

51.     Each party shall be responsible for and shall pay its own costs and attorney fees.

## XII. NOTICE

52.     Unless otherwise indicated, any notice, report, or communication required under the provisions of this Decree shall be sent by email as follows:

> Michael Imdieke
> Trial Attorney
> EEOC Denver Field Office
> 303 E. 17th Avenue, Suite 410
> Denver, CO 80203
> michael.imdieke@eeoc.gov

## XIII. SIGNATURES

53.     The parties agree to the entry of this Decree subject to final approval by the

Court.

SO ORDERED this 21st day of May, 2021.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

BY CONSENT:

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

JOYVIDA D/B/A AMADA SENIOR CARE

By: _____
         Mary Jo O'Neill
         Regional Attorney

By: _____
         Kenneth Jenson
         CEO

Date: _____

Date: _____5/14/21_____

APPROVED AS TO FORM:

_____

Michael Imdieke
Trial Attorney
EEOC Denver Field Office
303 E. 17th Avenue, Suite 410
Denver, CO 80203

**Attorney for Plaintiff EEOC**

_Ashley Hernandez-Schlagel_

Ellis J. Mayer
Ashley Hernandez-Schlagel
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776

**Attorney for Defendant**

-22-

BY CONSENT:

EQUAL EMPLOYMENT OPPORTUNITY                    JOYVIDA D/B/A AMADA SENIOR CARE
COMMISSION

By: ___Mary O'Neill___          By: _____
    Mary Jo O'Neill                              Kenneth Jenson
    Regional Attorney                          CEO

Date: ____5/19/2021_____          Date: _____

APPROVED AS TO FORM:

___s/ Mike Imdieke_____
Michael Imdieke
Trial Attorney
EEOC Denver Field Office
303 E. 17th Avenue, Suite 410
Denver, CO  80203

**Attorney for Plaintiff EEOC**

_____
Ellis J. Mayer
Ashley Hernandez-Schlagel NATHAN
DUMM & MAYER P.C. 7900 E. Union
Avenue, Suite 600 Denver, CO
80237-2776

**Attorney for Defendant**

**EXHIBIT A**

**LETTER OF ACKNOWLEDGMENT**

Dear Ms. _____,

Amada Senior Care respects the right of its employees and applicants for employment to work in an environment free from discrimination and harassment.  We want to extend our sincere apologies for any experience as an Amada Senior Care caregiver that you felt constituted sexual harassment or felt was retaliatory in nature.  Amada Senior Care strives to ensure that every employee works in an environment free from sexual harassment and retaliation.

Signed:      _____

                      Kenneth Jenson

**EXHIBIT B**

**NOTICE**

The following notice is being posted pursuant to the terms of a Consent Decree reached between the Parties in *EEOC v. Joyvida LLC d/b/a Amada Senior Care*, filed in the United States District Court for the District of Colorado, Civil Action No. 18-cv-02026-RBJ.

Management of Amada Senior Care wishes to emphasize the company's fundamental policy of providing equal employment opportunity in all of its operation and in all areas of employment practices. Amada Senior Care seeks to ensure that there shall be no discrimination against any employee or applicant for employment on the grounds of race, color, religion, sex, pregnancy, national origin, age or disability.  This policy extends to insurance benefits and all other terms, conditions and privileges of employment.

Federal law makes it unlawful for an employer to discriminate based upon the sex of an applicant or employee.  Further, it is unlawful for any employer to retaliate against an employee because he or she has requested reasonable accommodation for disability or religion, opposed discriminatory employment practices, or because he or she has filed a charge of discrimination with any municipal, state or federal equal employment opportunity agency, or because he or she has participated in an investigation of a charge of discrimination.

Amada Senior Care respects the right of its employees and applicants for employment to work in an environment free from discrimination and harassment. Accordingly, Amada Senior Care reaffirms its commitment to complying with federal law, in that it is our policy to prohibit all discrimination and harassment based on sex.

Any employee who believes that he/she has suffered discrimination on the basis of age, race, color, religion, sex, pregnancy, national origin, disability, or genetic status has the right to contact the EEOC directly at 1-800-669-4000, or the Colorado Civil Rights Division at 303-894-2997. In compliance with federal law, no official at Amada Senior Care will retaliate against an employee who makes an internal complaint of discrimination or who contacts the EEOC or its state counterpart, the Colorado Civil Rights Division.

This Notice shall remain posted for the term of 3.5 years.


Amada Senior Care


By:_____          _____
                                                                            Date

**Exhibit C**

In consideration for $_____ paid to me by Joyvida, LLC d/b/a Amada Senior Care, in connection with the resolution of EEOC v. Joyvida, LLC d/b/a Amada Senior Care, I waive my right to recover for any claims of, or damages for, sex discrimination, sex harassment, retaliation, and/or constructive discharge arising under Title VII of the Civil Rights Act of 1964 that I had against Joyvida, LLC d/b/a Amada Senior Care or its insurer, SECURA, A Mutual Company (including its parent companies, affiliates, subsidiaries, and employees), prior to the date of this release and that were included in the claims alleged in EEOC's complaint and disclosures in EEOC v. Joyvida, LLC d/b/a AMADA SENIOR CARE, Civil Action No. 18-cv-02026-RBJ.

_____
Printed Name

_____
Signature